UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR EVIRONMENTAL
HEALTH
2201 Broadway, Suite 508
Oakland, CA 94612

      *Plaintiff,*

  v.

EUROCHEM NORTH AMERICA
CORPORATION
3227 East 31st Street
Tulsa, OK 74105

      *Defendant.*

Case No.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF**

**Introductory Statement**

1. This is a citizen enforcement suit brought by the Center for Environment Health ("CEH") to redress and prevent ongoing violations of reporting requirements for chemical substances under the Toxic Substances Control Act, 15 U.S.C. §§ 2601-2629 ("TSCA").

2. CEH is a non-profit organization striving to protect children and families from

1

harmful chemicals in air, food, water, and everyday products. CEH protects people from toxic chemicals by working with communities, businesses, and the government to demand and support business practices that are safe for human health and the environment. CEH is headquartered in Oakland, California.

3. Defendant Eurochem North America Corporation ("Eurochem") is an importer of chemicals subject to reporting obligations under TSCA. Eurochem is headquartered in Tulsa, Oklahoma.

4. CEH files this complaint under TSCA's citizen suit provision, section, 15 U.S.C. § 2619(a), seeking declaratory and injunctive relief to remedy Eurochem's TSCA violations and recovery of CEH's reasonable fees and costs.

5. Eurochem has violated, and continues to violate, the Chemical Data Reporting ("CDR") rule promulgated by the Environmental Protection Agency ("EPA") under TSCA by failing to report imports of chemicals subject to the rule in amounts exceeding 25,000 pounds per year between 2016 and 2019. The chemicals to which these violations relate include but are not limited to ammonium nitrate, ammonium sulfate, calcium ammonium nitrate, defluorinated phosphate, diammonium phosphate, monoammonium phosphate, monocalcium phosphate, monodicalcium phosphate, and urea. Billions of pounds of these chemicals were imported by Eurochem between 2016 and 2019 but were not reported by Eurochem by the January 29, 2021, reporting deadline as required by the CDR rule.

6. Eurochem's failure to report these imports undermines EPA's efforts under TSCA to evaluate and address chemical risks. It also prevents the public from tracking the movement of unsafe chemicals in commerce as well as monitoring their

presence in communities.

7.      On June 4, 2025, CEH served Eurochem with a presuit notice of violation that identified Eurochem's failure to comply with the CDR rule.  After receiving the notice, Eurochem engaged with CEH to discuss CEH's claims, but the parties were unable to reach terms by which to resolve CEH's claims short of litigation.  Eurochem has not remedied its CDR rule noncompliance for failing to report its imports of billions of pounds of ammonium nitrate, ammonium sulfate, calcium ammonium nitrate, defluorinated phosphate, diammonium phosphate, monoammonium phosphate, monocalcium phosphate, monodicalcium phosphate, and urea and likely other substances.  Absent an order from this Court restraining Eurochem's CDR rule violations, Eurochem will continue to violate TSCA.

## TSCA Citizens Suit Provision

8.      Under section 20(a)(1)(B) of TSCA, "any person may commence a civil action . . . against any person . . . who is alleged to be in violation of this Act . . . to restrain such violation." 15 U.S.C. § 2619(a).

9.      Section 20(b)(1)(A) provides that no action to restrain a violation of TSCA may be commenced "before the expiration of 60 days after the plaintiff has given notice of such violation (i) to the Administrator and (ii) to the person who is alleged to have committed such violation." 15 U.S.C. § 2619(b).

10.     Civil actions under section 20(a)(1)(B) of TSCA "shall be brought in the United States District Court for the district in which the alleged violation occurred or in which the defendant resides or in which the defendant's principal place of business is located . . . without regard to the amount in controversy or the citizenship of the parties."  15 U.S.C. §

2619(a)(2).

12.     Under section 20(c)(2), the court in an action to restrain a violation under section 20(a)(1) "may award costs of suit and reasonable fees for attorneys and expert witnesses if the court determines that such an award is appropriate." 15 U.S.C. § 2619(c)(2).

## TSCA Provisions

13.     TSCA was enacted in 1976 to create a national program for assessing and managing the risks of chemicals to human health and the environment. Among the goals stated in TSCA section 2(b), 15 U.S.C. § 2601(b), are that: (1) "adequate information should be developed with respect to the effect of chemical substances and mixtures on health and the environment" and (2) "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment."

14.     The need for this comprehensive framework for managing chemical risks was described as follows in the Senate Report on the original law:

> As the industry has grown, we have become literally surrounded by a man-made chemical environment. We utilize chemicals in a majority of our daily activities. We continually wear, wash with, inhale, and ingest a multitude of chemical substances. Many of these chemicals are essential to protect, prolong, and enhance our lives. Yet, too frequently, we have discovered that certain of these chemicals present lethal health and environmental dangers.

Senate Rept. No. 94-698, 94th Cong. 2d Sess. (1976) at 3.

15.     After a multi-year effort to overhaul and strengthen its key provisions, TSCA was amended by the Frank R. Lautenberg Chemical Safety for the 21st Century Act, which took effect on June 11, 2016. These TSCA amendments enhance the chemical regulatory authorities in section 6 by establishing a new integrated process for (1) prioritizing chemicals, (2)

conducting risk evaluations on high- priority chemicals and (3) promulgating rules under section 6(a) to eliminate unreasonable risks identified in risk evaluations. Congress set strict deadlines for each of these steps and directed EPA to address a minimum number of chemicals by these deadlines. It also removed the impediments to effective regulation by eliminating any consideration of costs and other non-risk factors in determining whether chemicals present an unreasonable risk of injury and directing EPA to impose requirements "necessary so that the chemical no longer presents such [unreasonable] risk."

### TSCA's Chemical Data Reporting Requirements

16.     TSCA section 8(a)(1) provides that EPA "shall promulgate rules" that require each person who manufactures or processes a chemical substance to submit such reports as the "Administrator may reasonably require." 15 U.S.C. § 2607(a). Because section 3(9) defines "manufacture" to include "importation," reports must be submitted by importers of chemical substances subject to these rules. The rulemaking authority under section 8 is a critical tool to collect the information on chemical use and exposure necessary for informed and effective risk evaluation and risk management.

17.     In 2011, EPA promulgated the CDR rule using its authority under TSCA section 8(a)(1). 40 C.F.R. Part 711. The rule is intended to support EPA's risk assessment and reduction efforts by providing basic information about the manufacturing, use and exposure profiles of chemicals in commerce. As the Agency explained in 2011, the new reporting requirements:

> will enhance the capabilities of the Agency to ensure risk management actions are taken on chemical substances which may pose the greatest concern. More in-depth reporting of the processing and use data, more careful consideration of the need for confidentiality claims, and adjustments to the specific data elements are important aspects of this action. By enhancing the data supplied to the Agency, EPA expects to more effectively and expeditiously identify and address potential

5

>risks posed by chemical substances and provide improved access and information to the public.

*TSCA Inventory Update Reporting Modifications; Chemical Data Reporting*, 76 Fed. Reg. 50816-0176, 50819 (August 16, 2011).

18. Under the rule, reporting is required for all chemicals manufactured or imported at a site in volumes of 25,000 pounds or more per facility in a given reporting year. For chemicals already regulated under certain TSCA provisions, the reporting threshold is set at 2,500 pounds per reporting year. Manufacturers and importers subject to the CDR rule must report every four years. The most recent reporting cycle was completed in early 2021, with reports due on January 29, 2021. For this CDR rule update, activities conducted in calendar years 2016-2019 determined the application of reporting requirements and the information to be reported.

19. Under the CDR rule, reports must be submitted using a "Form U." Separate forms must be filed for each manufacture or import site. The Form U must include import/manufacture volume for each of the last four years, the number of workers exposed and basic information about site operations. It must also include information about industrial, commercial and consumer uses of the substance at other sites and the potential for exposure associated with these downstream activities.

20. In expanding the scope of reporting to capture these data elements, EPA emphasized that this "exposure information is an essential part of developing risk evaluations and, based on its experience in using this information, the Agency believes that collecting this exposure information is critical to its mission of characterizing exposure, identifying potential risks, and noting uncertainties for [reportable] chemical substances." *TSCA Inventory Update Reporting Modifications; Chemical Data Reporting*, 76 Fed. Reg. 50816-01, 50823 (August 16,

2011).

21. Section 15 of TSCA provides that it is unlawful for any person to

> (1) fail or refuse to comply with any requirement of this subchapter or any rule promulgated . . . under this title; or . . . . (3) fail or refuse to . . . submit reports, notices, or other information; . . . as required by this Act or a rule thereunder

15 U.S.C. § 2614.

22. A failure or refusal to comply with the CDR rule constitutes a "fail[ure] or refus[al] to . . . submit reports . . . as required by this Act or a rule thereunder" and thus is an unlawful act under section 15. 15 U.S.C. § 2614. Noncompliance with the CDR rule therefore constitutes a "violation of this Act" subject to a citizens' suit under section 20(a)(1) of TSCA. 15 U.S.C. § 2647(d).

## Jurisdiction and Venue

23. CDR reports must be reported through EPA's Central Data Exchange, an electronic site used for submission of reports to the Agency which is maintained at EPA headquarters at 1200 Pennsylvania Avenue NW in Washington, D.C.

24. CDR reports are reviewed and analyzed by EPA's Office of Chemical Safety and Pollution Prevention, which is located at EPA headquarters.

25. Eurochem's violations of the CDR rule accordingly occurred in the District of Columbia.

26. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 2619(a), under which citizen suits to restrain violations of TSCA "shall be brought in the United States District Court for the district in which the alleged violation occurred."

27. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 2619(a), which provide that the district courts "shall have jurisdiction over suits brought

under this section, without regard . . . to the citizenship of the parties" and "process may be served on the defendant in any judicial district in which the defendant resides or may be found."

### CEH's Notice of Intent to Sue

28. On June 4, 2025, CEH sent by registered mail a notice of intent to sue under TSCA's CDR rule to Eurochem and EPA Acting Administrator Lee Zeldin.

29. The presuit notice provided sufficient information for Eurochem to identify: (1) the specific provision of TSCA or of the rule or order under TSCA alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the persons responsible for the alleged violation; (4) the location of the alleged violation; (5) the date or dates of the alleged violation as closely as the citizen is able to specify them; and (6) the full name, address, and telephone number of the citizen giving notice. *See* 40 C.F.R. § 702.62(b). The notice informed Eurochem that CEH's investigation was ongoing and that it was likely that Eurochem had failed to report numerous substances in violation of the CDR rule.

30. Eurochem received CEH's notice and so did EPA.

31. After receiving the presuit notice, Eurochem engaged in efforts to resolve the allegations in CEH's presuit notice letter, but the parties were not able to reach terms by which to resolve CEH's claims short of litigation.

32. Eurochem has not remedied the CDR rule violations alleged in this complaint.

33. EPA has not commenced an action under TSCA to require Eurochem to comply with CDR rule requirements under TSCA section 20(b)(1)(B).

### Eurochem's Imports of Chemicals During the 2016-2019 CDR Reporting Period

34. During the 2020 Reporting Period, in 2016, Eurochem received shipments of ammonium nitrate totaling 42,377,205 pounds. In 2017, Eurochem received shipments of

ammonium nitrate totaling 66,101,077 pounds.  In 2018, Eurochem received shipments of ammonium nitrate totaling 217,246,702 pounds.  In 2019, Eurochem received shipments of ammonium nitrate totaling 213,949,053 pounds.

35. No Form Us for the ammonium nitrate shipments were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

36. During the 2020 Reporting Period, in 2016, Eurochem received ammonium sulphate imports totaling 65,940,184 pounds

37. No Form Us for the ammonium sulphate imports shipments were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

38. During the 2020 Reporting Period, in 2016, Eurochem received shipments of calcium ammonium nitrate totaling 19,122,215 pounds.  In 2018, Eurochem received shipments of calcium ammonium nitrate totaling 14,026,650 pounds.  In 2019, Eurochem received shipments of calcium ammonium nitrate totaling 164,330 pounds.

39. No Form Us for the calcium ammonium nitrate shipments were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

40. During the 2020 Reporting Period, in 2016, Eurochem received shipments of defluorinated phosphate totaling 138,397,889 pounds.  In 2017, Eurochem received shipments of defluorinated phosphate totaling 54,024,213 pounds.  In 2018, Eurochem received shipments of defluorinated phosphate totaling 181,329,995 pounds.  In 2019, Eurochem received shipments of defluorinated phosphate totaling 268,412,485 pounds.

41. No Form Us for the defluorinated phosphate shipments were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

42. During the 2020 Reporting Period, in 2016, Eurochem received shipments of

diammonium phosphate totaling 200,071,469 pounds.  In 2017, Eurochem received shipments of diammonium phosphate totaling 121,254,100 pounds.  In 2018, Eurochem received shipments of diammonium phosphate totaling 183,257,408 pounds.  In 2019, Eurochem received shipments of diammonium phosphate totaling 307,947,053 pounds.

43. No Form Us for the diammonium phosphate were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

44. During the 2020 Reporting Period, in 2016, Eurochem received shipments of monoammonium phosphate totaling 27,013,062,016 pounds.  In 2017, Eurochem received shipments of monoammonium phosphate totaling 129,212,778 pounds.  In 2018, Eurochem received shipments of monoammonium phosphate totaling 45,868,851,347 pounds.  In 2019, Eurochem received shipments of monoammonium phosphate totaling 623,413,564 pounds.

45. No Form Us for the monoammonium phosphate were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

46. During the 2020 Reporting Period, in 2016, Eurochem received shipments of monocalcium phosphate totaling 33,182,760,654 pounds.  In 2017, Eurochem received shipments of monocalcium phosphate totaling 22,277,685 pounds.  In 2018, Eurochem received shipments of monocalcium phosphate totaling 82,103,185 pounds.  In 2019, Eurochem received shipments of monocalcium phosphate totaling 13,227,720 pounds.

47. No Form Us for the monocalcium phosphate were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

48. During the 2020 Reporting Period, in 2018, Eurochem received shipments of monodicalcium phosphate totaling 3,802,000 pounds.

49. No Form Us for the monodicalcium phosphate were identified in EPA's

Central Data Exchange database for the 2020 reporting cycle.

50. During the 2020 Reporting Period, in 2016, Eurochem received shipments of urea totaling 24,875,728,393 pounds. In 2017, Eurochem received shipments of urea totaling 638,257,704 pounds. In 2018, Eurochem received shipments of urea totaling 676,211,688 pounds. In 2019, Eurochem received shipments of urea totaling 1,097,995,617 pounds.

51. No Form Us for the urea were identified in EPA's Central Data Exchange database for the 2020 reporting cycle.

## Imports Under the CDR Rule

52. State and federal agencies charged with protecting public health need complete and accurate information about the total amount of toxic substances produced and imported in the United States and how and where toxic substances are distributed and used.

53. The CDR rule is an essential tool for tracking the production and use of toxic substances and Eurochem's failure to report large chemical imports under the CDR rule weakens the ability of EPA and local communities to evaluate and protect against potential chemical exposures.

## Claim for Relief

54. CEH hereby incorporates by reference the allegations above as if fully set forth herein.

55. Section 20(a)(1)(B) of TSCA authorizes any person to file suit in a United States District Court against any person alleged be in violation of the Act to restrain such violation. 15 U.S.C. § 2619(a)(1).

56. CEH provided notice to Eurochem and the EPA Administrator more than 60 days before filing this action, as required by TSCA section 20(b)(1). 15 U.S.C. § 2619(b).

57. Eurochem imported many billions of pounds of substances subject to the CDR Rule during 2016-2019 period for which it did not report. The amounts of these substances are well above the CDR Rule's reporting threshold.

58. As the importer of these substances, Eurochem was and remains in violation of the CDR reporting requirements under 40 C.F.R. § 711.8.

59. These violations are "prohibited acts" under TSCA section 15 and are "violations of this Act" for purposes of citizen suits under section 20(a)(1)(B).

60. CEH respectfully requests that the Court order Eurochem to report its imports of the nine unreported substances to EPA in compliance with the CDR rule and restrain Eurochem from ongoing violations of CDR reporting requirements.

### Request for Relief

WHEREFORE, CEH respectfully requests judgment in its favor and against Eurochem upon its claims and, further, requests that this Court enter judgment against Eurochem as follows:

(1) Declaring that Eurochem's failure to report billions of pounds ammonium nitrate, ammonium sulfate, calcium ammonium nitrate, defluorinated phosphate, diammonium phosphate, monoammonium phosphate, monocalcium phosphate, monodicalcium phosphate, and urea imports during the 2016-2019 reporting period to EPA is a violation of the CDR reporting requirements at 40 C.F.R. Part 711, a "prohibited act" under section 15 of TSCA and a "violation of this Act" actionable in a citizen's suit under section 20(a)(1)(B) of TSCA. 15 U.S.C. §§ 2614 and 2619(a);

(2) Declaring that CEH has met the notice requirements and other

prerequisites for relief under TSCA.  15 U.S.C. § 2619(b);

(3) Ordering Eurochem to file Form Us with EPA for its imports of these nine substances in compliance with the CDR rule requirements at 40 CFR Part 711.  15 U.S.C. § 2616(1);

(4) Ordering Eurochem to audit its manufacturing and import activities to identify any other ongoing violations of CDR reporting requirements and remedy such violations of CDR reporting requirements pursuant to TSCA section 20.  15 U.S.C. § 2616(1);

(5) Awarding CEH its costs of suit and reasonable fees for attorneys and expert witnesses in this action under 15 U.S.C. § 2619(c)(2); and

(6) Granting CEH such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 15th day of December 2025

*/s/ Robert M. Sussman*
Robert M. Sussman (DC BAR NO 226746)
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, D.C. 20008
(202) 716-0118
Bobsussman1@comcast.net